IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**THELMA I. SEAL AND**                              **PLAINTIFFS**
**CYNTHIA TARVER CARRANZA**

**VERSUS**                            **CIVIL ACTION NO.:1:20-cv-190-HSO-JCG**

**SOUTHERN ENERGY HOMES, INC.,**                     **DEFENDANTS**
**A DELAWARE CORPORATION,**
**STEVEN W. STANFORD,**
**D/B/A STANFORD MOBILE HOMES SALES**
**AND CARLSBAD NATIONAL BANK**

## MEMORANDUM IN SUPPORT OF
## MOTION TO COMPEL ARBITRATION AND FOR STAY
## OF SOUTHERN ENERGY HOMES, INC.

The Defendant Southern Energy Homes, Inc. ("Southern Energy"), by and through counsel, submits this Memorandum in support of its Motion to Compel Arbitration and For Stay. In support, Southern Energy says:

**I.     INTRODUCTION.**

Section 2 of the Federal Arbitration Act ("FAA"), provides that "[a] written provision in . . . a contract evidencing a transaction involving interstate commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. 9 U.S.C. §4 further requires enforcement of the arbitration agreement because the Plaintiffs' claims are within its scope. Though not a signatory to the Binding Arbitration Agreement, the Plaintiff Cynthia Tarver Carranza ("Carranza") is bound to it because the claims asserted by Thelma I. Seal ("Seal") and Carranza arise from and are related to the subject manufactured home and its contract for purchase and sale and are within the scope of the agreement. Pursuant to 9 U.S.C. §3 this action should be stayed pending the result of the arbitration proceeding.

In determining whether to grant a motion to compel arbitration, a court must determine whether the parties agree to arbitrate the dispute. In doing so, the court must determine (1) whether there is a valid arbitration agreement between the parties, and (2) whether the dispute falls within the scope of the arbitration agreement. *Safer v. Nelson Financial Group, Inc.,* 422 F. 3d 289, 293 (5th Cir. 2005); *Webb v. Investacorp, Inc.,* 89 F. 3d 252, 257-58 (5th Cir. 1996). If it is found the parties agreed to arbitrate the dispute, a court must determine whether there are any legal constraints to enforcement of the agreement. *Safer,* 422 F.3d at 294; *Webb,* 89 F.3d at 258.

The Plaintiff Seal signed an arbitration agreement with Southern Energy relating to a transaction affecting interstate commerce. Defendant Steven W. Stanford, d/b/a Stanford Mobile Homes Sales ("Stanford") is also a signatory to the agreement. Carlsbad National Bank ("CNB") is a beneficiary by express terms of the agreement. (Exh. B-1 to motion - Binding Arbitration Agreement) Claims stated in the Plaintiffs' Complaint for Damages (Exh. "A" to motion) are within the scope of the arbitration agreement.

**II.     UNDISPUTED FACTS.**

1. On November 3, 2016, the Plaintiff Thelma I. Seal purchased a 2016 manufactured home, Serial No.: SAD023102AL (the "Home") from the Defendant Stephen W. Stanford, d/b/a Stanford Mobile Home Sales.

2. The Home was manufactured by the Defendant Southern Energy which sold it to the dealer Stanford by invoice dated June 20, 2016. The retail purchase price for the Home was $60,252.94. The Plaintiff Seal made a down payment of $6,252.94 and financed the balance of $56,321.61.

3. The Defendant CNB is the assignee of the purchase money lender Triad Financial Services which loaned the balance of the purchase price to Thelma I. Seal.

4. The transaction for purchase and sale of the Home included sales contract and bill of sale, a promissory note and security agreement, and an application for certificate of title for the Home each dated November 3, 2016, and each signed by the Plaintiff Thelma I. Seal.  (Exh. A to Motion - Complaint for Damages)

5. The Binding Arbitration Agreement is dated November 3, 2016, and provides that the "Parties ... agree to submit to binding arbitration any and all claims and disputes (including contract, tort, common law, statutory and regulatory claims) arising from or relating to the Contract, the Home, the Sale of the Home, the Design and Construction of the Home...".  (Exh. B-1 to Motion)

6. The signatory parties to the contract for purchase and sale include the Plaintiff Seal, the dealer Stanford, and the manufacturer Southern Energy.

7. On November 2, 2019, Plaintiffs Seal and Carranza filed their Complaint for Damages against Defendants Southern Energy, Stanford and CNB in the Circuit Court of Pearl River County, Mississippi, Case No.: 55CI1:19-cv-00137.  (Exh. A to Motion)  By notice filed June 10, 2020, the Defendant Southern Energy removed the case to this Court which assigned it Civil Action No.: 1:20-cv-190-HSO-JCG. [Doc. 1]

8. The answer filed by Southern Energy [Doc. 4] includes the affirmative defense of mandatory binding arbitration of the Plaintiffs' claims in accordance with Binding Arbitration

Agreement signed by Seal, as does the answer filed by Stanford [Doc. 1-2, pp. 60-72] and the answer filed by CNB.[1] [Doc. 7]

**III.     ARGUMENT.**

The Court should grant the Motion to Compel Arbitration and For Stay because there is a valid written agreement for that relief and the dispute between the Plaintiffs and Defendants is within the broad scope of that agreement *Safer,* 422 F.3d at 293; *Webb,* 89 F.3d at 257-58. The Binding Arbitration Agreement involves a transaction affecting interstate commerce such that the Federal Arbitration Act has application. 9 U.S.C. §2, et seq.

**A.     Seal entered a written arbitration agreement with Southern Energy and Stanford and the Plaintiffs' claims are within the scope of that Agreement**

Under Mississippi law a person is charged with knowing the contents of any documents that he executes. *Kisner v. Bud's Mobile Homes,* 512 F.Supp. 2d 549, 554 (S.D. Miss. 2007) citing *United Credit Corp. v. Hubbard*, 905 So.2d 1176, 1178 (Miss. 2004). It is the Court's duty to "rigorously enforce" such an agreement with arbitration provisions governed by the FAA. *See Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 226 (1987).

The Binding Arbitration Agreement includes "any and all claims and disputes...arising from or relating to the contract, the home, the design and construction of the Home, ...". (See Exh. (B)1 to Motion) The terms "disputes, claims, controversies...arising out of or relating to ... the Home ..." states an agreement that is sweeping in scope making the Agreement to arbitrate as broad as can be defined. When an arbitration agreement defines its scope using terms such as "any controversy" it

---

[1]The Plaintiffs assert no claims against CNB arising from the credit transaction. Their claims against the Defendants collectively sound in contract and warranty and arise from purchase, sale and occupation of the Home. The Plaintiffs contend they are afforded standing to assert such claims against CNB by the provisions in the purchase money promissory note assigned to CNB. (See Exh. A to Motion - Complaint for Damages)

is "broad" and "sweeping" and includes any claim related to the contract in question. *Smith Barney, Inc. v. Henry*, 775 So.2d 722, 725-26 (Miss. 2001).

The Fifth Circuit has recognized the broad scope of similar language. See *Hornbeck Offshore Corp. v. Coastal Carrier Corp.,* 981 F.2d 752, 755 (5th Cir. 1993). (Arbitration provision using the term "any dispute" denotes an agreement broad in scope). When broad contract language is used to establish the scope of an arbitration agreement, it is not limited claims that arise under the contract but instead extends to all disputes having "a significant relationship to the contract..." *Penzoil Exploration and Prod. Co. v. Ramco Energy, Ltd.,* 139 F.3d 1061, 1067 (5th Cir. 1998). In *Nauru Phosphate Royalties, Inc. v. Drago Daic Interests, Inc.*, 138 F.3d 160, 165 (5th Cir. 1998), the court stated the "when parties include such a broad arbitration clause, they intend the clause to reach all aspects of the relationship."

**B.    Carranza has assented to terms of the Binding Arbitration Agreement and is bound by it.**

The Complaint for Damages contains allegations that the Home is subject to bulk water leaks in the kitchen and living room area caused by improper construction and improper transportation of the Home. The Plaintiffs allege generally a defective condition of the Home and the Complaint states separate counts designated as breach of contract, breach of warranty and violation of the Magnuson-Moss Warranty Act.  Seal and Carranza seek remedies of revocation of their acceptance of the Home, rescission of the sales contract, compensatory and consequential damages, punitive damages and attorney's fees and costs.  All claims asserted by Seal and Carranza are within the broad scope of the Binding Arbitration Agreement.  All of the Plaintiffs' claims are related to the contract for sale and so  "shall be resolved by binding arbitration". *See Bud's Mobile Homes,* 512 F.Supp. 2d at 554.

Though not a signatory to the Binding Arbitration Agreement, the Plaintiff Carranza is bound to it. The object of a signature is to show mutuality or assent but these facts may be shown in other ways such as by the acts or conduct of the parties. *Turney v. Marion County Bd. of Educ.,* 481 So.2d 770, 774 (Miss. 1985) (quoting 17 C.J.S. Contracts §62 (1963). In *American Bankers Ins. Co. Of Fla. v. Tellis*, 192 So.3d 386 (Ala. 2015) the Alabama Supreme Court recognized that general rule holding that assent to arbitration provisions in Homeowner's Policies was established when policy holders accepted and acted upon the policies. *See also Philadelphia Am. Life Ins. Co. v. Bender*, 893 So.2d 1104 (Ala. 2004) (hospital accident policy with arbitration clause enforced when insured filed bad faith suit for failure to pay claim).

Carranza alleges that the Home is installed upon property owned by her, that she has resided in the Home since January, 2017, and that she satisfied her obligation to allow opportunity to cure the defects alleged. Carranza alleges entitlement to recovery under "express warranties given and/or made by the Defendants unto Plaintiffs regarding the manufacture, sale, purchase, delivery, and/or set-up of the subject Home on the site on the real property of Carranza." [Exh. A to Motion - Complaint for Damages]. Carranza claims all incidents of ownership in and to the manufactured home and all rights associated therewith.[2]

Such claims arise from and are related to the Home as well as the contract for its purchase and sale and are subject to the terms of the Binding Arbitration Agreement. See *Ramco Energy, Ltd.,* 139 F.3d at 1067 ("when the scope of an arbitration agreement is broad it extends to all disputes having a significant relationship to the contract...").

---

[2] As an occupant of the Home, Carranza is also a third-party beneficiary of the Binding Arbitration Agreement by its express terms. (Exh. (B)-2 to Motion)

Estoppel prevents a party from accepting the benefits of a contract and attempting to avoid its burdens. *Washington Mut. Finance Group, LLC v. Bailey*, 364 F.3d 260, 268 (5th Cir. 2004). Direct benefit estoppel applies when a non-signatory has embraced a contract with arbitration provisions but would oppose arbitration during litigation. *Noble Drilling Servs., Inc. v. Certex USA, Inc.,* 620 F.3d 469, 473 (5th Cir. 2010). A party can embrace a contract in two ways: 1) by knowingly seeking and obtaining "direct benefits" from that contract; or 2) by seeking to enforce the terms of that contract or asserting claims that must be determined by reference to that contract. *Scruggs v. Wyatt,* 60 So.3d 758, 767-68 (Miss. 211), citing *Noble Drilling*, 620 F.3d at 473.

> Yet this is precisely what (the Plaintiff) is attempting to do here: suing based on one part of the transaction that she says grants her rights while simultaneously attempting to avoid other parts of the same transaction that she views as a burden - namely, the arbitration agreement. We find that the doctrine of equitable estoppel acts to prevent her from taking such inconsistent positions.

*Washington Mut. Finance Group, LLC,* 364 F.3d at 268.

The Plaintiffs explicitly recognize that the purchase and sales transaction for the Home involves separate instruments executed by the same parties. (Exh. A to Motion - Complaint for Damages). The Complaint incorporates by reference the contract for purchase and sale of the Home, the promissory note and security agreement for the Home, and the title application, each signed by Seal. The Binding Arbitration Agreement was also signed by Seal at the same time, November 3, 2016, as a part of the sales transaction for the Home.

> Under general principles of contract law, separate instruments executed contemporaneously by the same parties for the same purposes, as a part of the same transaction, are to be construed together. In other words, when separate documents are executed at the same time, by the same parties, as part of the same transaction, they may be considered as one instrument.

*Sullivan v. Mounger*, 882 So.2d 129, 135 (Miss. 2004), citing *Neal v. Hardy's Food Systems, Inc.*,

918 F.2d 34, 37 (5th Cir. 1990). Seeking "direct benefits" from the sales transaction and seeking to enforce its terms, Carranza is estopped to claim the benefit of the some of the terms and deny others. *Scruggs,* 60 So. 3d 767-68.

    **C.    Manufacture, purchase and sale of the Home involve and affect interstate commerce.**

In *First Family Fin. Services, Inc. v. Fairley*, 173 F. Supp. 2d 565, 573 (S. D. Miss. 2001) the court stated "having found that a written arbitration agreement exists and that the claims of the Defendants are covered by the arbitration agreement, the court next considers the connection of the agreement with interstate commerce." *id.* Specifically, to invoke Section 2 of the FAA, a written agreement to settle a dispute by arbitration must be related to "a contract evidencing a transaction *involving commerce.*" 9 U.S.C. §2 (emphasis added).

The United States Supreme Court has held that the term "involving commerce" is the functional equivalent of "affecting commerce":

> We have interpreted the term "involving commerce" in the FAA as the functional equivalent of the more familiar term "affecting commerce" - words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power.

*Citizen's Bank v. Alafabco, Inc.,* 539 U.S. 52, 56 (2003). (citations omitted). The Section 2 FAA requirement "involving commerce" is met "where contractual activity facilitates or affects commerce, even tangentially." *Arce v. Cotton Club of Greenville, Inc.,* 883 F. Supp. 117, 119 (N.D. Miss. 1995). Here, the manufacturer Southern Energy, a Delaware Corporation doing business in Alabama, sold the Home to independent dealer Stephen Stanford, a Mississippi resident. The Home was manufactured using materials, parts and appliances purchased from suppliers and shipped from various states across state lines to Alabama. From Alabama the Home was transported to

Mississippi where it was purchased by the Plaintiff Seal from the dealer Stanford. [Exh. B to motion - Declaration of Andrew Snuggs].

Beyond affecting interstate commerce in fact, the United States Supreme Court has held that interstate commerce is affected where "the economic activity in question would represent 'a general practice... subject to federal control.'" *Alafabco,* 539 U.S. at 57. By the National Manufactured Housing Construction and Safety Standards Act, 42 U.S.C. §5401, et seq. Congress enacted laws establishing federal construction and safety standards for manufactured homes. Regulations and standards for design and construction for manufactured housing or set forth in the Code of Federal Regulations, Title 24, Federal Manufactured Home Construction and Safety Standards, 24 CFR §3280, et seq. Procedural and enforcement regulations for manufactured housing are in the Code of Federal Regulations, Title 24, Manufactured Home Procedural and Enforcement Regulations, 24 CFR §3282, et seq. The design, construction, sale and performance of the Home are subject to federal control and affect and involve interstate commerce as contemplated by the FAA.

**D.     This action should be stayed pending completion of binding arbitration of the Plaintiffs' claims.**

It is well settled that claims are appropriately stayed when they involved common issues of fact and law with those subject to arbitration or when the arbitration is likely to dispose of issues common to claims against arbitrating and non-arbitrating defendants. This is particularly so because of the settled law that the doctrine of issue preclusion is applicable to issues resolved by an earlier arbitration. *Katsoris v. WMG ING, LLC,* 237 F.Supp. 3d 92, 110 (S.D. N.Y. 2017). The decision is one left to the district court, or to the state trial court under applicable state procedural rules as a matter of discretion to control its docket. *Landis v. North American Co.,* 299 U.S. 248, 254 - 55, 57 S. Ct. 163, 181 L.Ed. 153 (1936).

In certain instances Section 3 of the Federal Arbitration Act applies to require a mandatory stay of claims against a non-signatory to an arbitration agreement. Section 3 provides that in any suit brought in federal court "upon any issue referable to arbitration" under a written arbitration agreement, "the court ... *shall* on application of one of the parties" stay the suit. 9 U.S.C. §3 (emphasis supplied). *Waste Management, Inc. v. Residuous Industriales Multiquim, S.A.,* 372 F. 3d 339, 342, (5th Cir. 2004).

In *Hill v. GE Power Sys.,* 282 F.3d 343 (5th Cir. 2002) the Fifth Circuit reversed the denial of a motion by a non-signatory to stay litigation, finding that the claims against the non-signatory were inseparable from those between other parties to be decided by arbitration. (Suit against a non-signatory based on the same operative facts is inherently inseparable from the claims against the signatory and will always contain issues referable to arbitration under an agreement in writing.) *Id.* at 347-48. See also *Harvey v. Joyce,* 199 F.3d 790, 795-96 (5th Cir. 2000) (stay of claims against non-signatory corporation ordered under 9 U.S.C. §3 where non-signatory corporations potential liability was inseparable from claims against owner of 50% of corporation shares who did sign an arbitration agreement).

Therefore, should the Court compel less than all of the Plaintiffs' claims in this action against each of the Defendants, a stay of this action is mandatory under Section 3 of the FAA. However, district courts can dismiss cases where "all of the issues raised in the action are arbitrable and must be submitted to arbitration, as simply staying the action will serve no purpose." *Alford v. Dean Witter Rentals, Inc.,* 975 F.2d 1161, 1164 (5th Cir. 1992)

## IV. CONCLUSION

The claims of Plaintiffs Seal and Carranza each arise from and are related to the subject manufactured home and its purchase, sale, and performance. The Plaintiffs' claims are fully within the broad scope of the Binding Arbitration Agreement. The purchase and sale transaction for the Home affects interstate commerce so that the Federal Arbitration Act has application requiring binding arbitration of the Plaintiffs' claims in this case before the American Arbitration Association as provided in the Binding Arbitration Agreement signed by Southern Energy, Stanford Mobile Homes, and Thelma I. Seal dated November 3, 2016.

RESPECTFULLY SUBMITTED this the 9th day of July, 2020.

SOUTHERN ENERGY HOMES, INC.

BY:   */s/ James L. Quinn*
     JAMES L. QUINN, ITS ATTORNEY

James L. Quinn, MSB#4590
Attorney at Law, PLLC
P. O. Box 271
Hattiesburg, MS 39403-0271
(601) 544-1842 - Telephone
(601) 544-1846 - Facsimile
jlq@jimquinnlaw.com

## **CERTIFICATE OF SERVICE**

      I, James L. Quinn, attorney for Southern Energy Homes, Inc., do hereby certify that I have this date filed a copy of Memorandum in Support of Motion to Compel Arbitration and For Stay by Southern Energy Homes with the Clerk of the Court using the CM/ECF System which sent copies of the same to the following:

| | |
|---|---|
| Nathan S. Farmer<br>Attorney at Law<br>P. O. Box 1608<br>Picayune, MS 39466 | Attorney for Plaintiff |
| C. Paige Herring<br>McAngus, Goudelock & Courie, LLC<br>P.O. Box 2955<br>Jackson, MS 39158 | Attorney for Steven W. Stanford |
| Rick A. LaTrace<br>Johnstone Adams, LLC<br>One Saint Louis Street, Suite 4000<br>Mobile, AL 36602 | Attorney for Carlsbad National Bank |

This the 9TH day of July, 2020

                                                              */s/ James L. Quinn*
                                                                 James L. Quinn